**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| WILLIAM MCNEIL, on behalf of himself and all others similarly situated,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>MARRIOTT INTERNATIONAL INC. and the MARRIOTT INTERNATIONAL INC. CORPORATE BENEFITS DEPARTMENT,<br><br>　　　　Defendants. | Civil Action No.: 8:25-cv-2975<br><br><br><br><br><br>**CLASS ACTION COMPLAINT** |

Plaintiff William McNeil ("Plaintiff"), individually and on behalf of the Class defined below of similarly situated persons, alleges the following against Marriott International, Inc. ("Marriott") and the Marriott Corporate Benefits Department ("Benefits Department" collectively, with Marriott, "Defendants") based upon personal knowledge with respect to himself and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

## NATURE OF THE ACTION

1.　　It is both unfair and unlawful for entities like Defendants to impose discriminatory and punitive health insurance surcharges on employees who use tobacco products. This lawsuit challenges Defendants' unlawful practice of charging a "tobacco surcharge" without complying with the regulatory requirements under the Employee Retirement Income Security Act of 1974 ("ERISA") and the implementing regulations. Under ERISA, wellness programs must offer, and provide notice of, a reasonable alternative standard that allows all participants to obtain the "*full reward*"—including refunds for surcharges paid while completing the program. *See* 29 U.S.C. § 1182(b)(2)(B); 42 U.S.C. § 300gg-4(j)(3)(D). Instead, under the Marriott Health and Welfare

Benefit Plan (the "Plan"), Defendants impose a discriminatory tobacco surcharge without providing participants with a reasonable alternative standard that provides them with the full reward. Further, Defendants fail to notify participants of an alternative standard, the completion of which will remove the surcharge and reimburse participants, violating ERISA's statutory and regulatory requirements and depriving employees of their right to avoid the surcharge.

2.      Tobacco surcharges have become more prevalent in recent years but to be lawful plans must make available a *compliant* "wellness programs" that provides employees with an avenue to avoid the surcharge. Making a compliant wellness program available means employers ***must*** adhere to strict rules set forth by ERISA and the implementing regulations established by the Departments of Labor, Health and Human Services, and the Treasury (collectively, the "Departments") over ten years ago in 2014. ERISA imbues the Departments with the authority to promulgate regulations interpreting ERISA § 702, 29 U.S.C. § 1182, the statute's non-discrimination provision. Accordingly, the Departments have developed a regulatory framework that "must be satisfied" to qualify for the statutory exception or safe-harbor. Employers can only invoke this safe harbor if they can demonstrate full compliance with all the requirements. Moreover, while courts are no longer required to defer to an agency's interpretation of an ambiguous *statute* under *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), courts must still defer to an agency's interpretation of its own *regulations*, if that interpretation is neither plainly erroneous nor inconsistent with the regulatory framework. *Auer v. Robbins*, 519 U.S. 452 (1997); *Kisor v. Wilkie*, 588 U.S. 558 (2019).

3.      ERISA's strict regulatory requirements are meant to ensure that wellness programs actually promote health and preclude discrimination, instead of wellness programs that are

"subterfuge[s] for discriminating based on a health factor."[1] The Final Regulations establish that for plans to be compliant, they must provide a clearly defined, reasonable alternative standard that allows participants to obtain the "full reward," including retroactive reimbursement of surcharges paid while completing the alternative standard. *See id.*, 33159–63. First and foremost, a wellness program must be genuinely designed to improve health or prevent disease, rather than functioning as an improper penalty imposed on certain participants under the guise of a health initiative. Defendants' Plan fails to clearly establish a reasonable alternative standard that informs employees of their right to avoid the surcharge, imposes a weekly $15 surcharge on all nicotine users, does not notify employees of an alternative to avoid the surcharge, does not ensure that employees who complete the alternative receive the "full reward," and unlawfully shifts costs onto employees in violation of ERISA's wellness program regulations.

4. The need for regulatory safeguards surrounding these types of wellness programs is underscored by studies showing little evidence that wellness programs effectively reduce healthcare costs through health improvement. Instead, the savings employers claim often result in cost-shifting onto employees with higher health risks, disproportionately burdening low-income and vulnerable workers who end up subsidizing their healthier colleagues.[2] The regulatory safeguards seek to prevent wellness programs from being misused as thinly veiled revenue-

---

[1] *Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158, 33163 (June 3, 2013) (hereinafter the "**Final Regulations**").

[2] Horwitz, J. R., Kelly, B. D., & DiNardo, J. E. (2013). *Wellness incentives in the workplace: Cost savings through cost shifting to unhealthy workers*. Health Affairs, 32(3), 468–476, 474 ("wellness programs may undermine laws meant to prevent discrimination on the basis of health status. Since racial minorities and people with low socioeconomic status are more likely than others to have more health risks, they are also more likely to be adversely affected by cost shifting"); *see also* Dorilas, E., Hill, S. C., & Pesko, M. F. (2022). *Tobacco surcharges associated with reduced ACA marketplace enrollment*. Health Affairs, 41(3), Abstract (finding that tobacco surcharges are significant barriers to affordable health insurance).

generating schemes at the expense of employees who are least able to afford the additional costs by shifting the burden to plan sponsors to demonstrate compliance once a participant alleges discriminatory surcharges. The goal is to ensure that wellness programs operate equitably and in a non-discriminatory manner, and to promote genuine health improvements

5.       Outcome-based programs,[3] such as being tobacco-free or completing a smoking cessation program, must offer a clearly defined "*reasonable* alternative standard," which is an alternative way for "all similarly situated individuals" to obtain the reward (or avoid a penalty) if they are unable to meet the initial wellness program standard (i.e., being tobacco-free). Critically, ERISA's implementing regulations require that "the *same*, *full reward*" must be provided to individuals who complete the alternative standard, regardless of when they do so during the plan year.[4] The Department of Labor ("DOL") has made clear that participants should not be forced to rush through the program under the threat of continued surcharges and that every individual participating in the program must receive the same reward as provided to non-smokers. *Id.* The Departments made this requirement clear when they stated it is "[t]he intention of the Departments . . . that, regardless of the type of wellness program, *every individual participating in the program* should be able to receive *the full amount of any reward or incentive* . . . ." *Id.*,

---

[3] "An outcome-based wellness program is a type of health-contingent wellness program that requires an individual to attain or maintain a specific health outcome (such as not smoking or attaining certain results on biometric screenings) in order to obtain a reward." 29 C.F.R. § 2590.702(f)(1)(v).

[4] *See* Final Regulations, 33163 ("while an individual may take some time to request, establish, and satisfy a reasonable alternative standard, **the same, full reward must be provided to that individual** as is provided to individuals who meet the initial standard for that plan year. (For example, if a calendar year plan offers a health-contingent wellness program with a premium discount and an individual who qualifies for a reasonable alternative standard satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.)" (emphasis added)).

33160 (emphasis added). Defendants violate these requirements by failing to provide a reasonable alternative standard that provides full reimbursement to employees who complete it, operating a non-compliant penalty structure rather than a lawful wellness incentive, and failing to clearly communicate the availability of a reasonable alternative standard in all Plan materials referencing tobacco-related premium differentials, including Benefit Guides, plan documents, and summary plan descriptions ("SPDs"). *Id.* These failures constitute direct violations of ERISA's wellness program regulations.

6.      Defendants cannot qualify for the statutory safe harbor because, while they impose a health-based surcharge, they do not make available to participants (or notify them of) a compliant wellness. The Plan fails to satisfy the essential regulatory criteria, which "must be satisfied," (*Id.*, 33160) for a wellness program to be lawful under ERISA. Final Regulations, 33160. The core deficiency of Defendants' wellness program is that it does not offer a reasonable alternative standard that makes available the "full reward" to all participants who complete it, as explicitly required by 42 U.S.C. § 300gg-4(j)(3)(D) and 45 C.F.R. § 146.121(f)(4)(iv). While the Plan offers a smoking cessation program, there is no mention of reimbursement or even avoiding the surcharge on a *prospective* basis. To that extent, Defendants fail to make available a clearly defined, reasonable alternative standard that ensures employees who satisfy that standard receive a full refund of the $15 weekly surcharges that are deducted from their paychecks. Instead, Defendants use these unlawfully obtained funds to offset Marriott's own contributions to the Plan, which allows additional money to remain in Marriott's accounts on which the company earns interest. By increasing participant contributions through this surcharge, Defendants reduce Marriott's contribution that would otherwise be required to fund the same coverage, depriving the Plan of employer funds it was obligated to receive.

7.      By failing to make available an alternative standard or a mechanism for retroactive reimbursement to those who satisfy that standard, Defendants operate an unlawful surcharge scheme that deprives employees who use nicotine of the opportunity to avoid the $15 weekly charge that is not imposed on non-smokers. This is not a minor technical failure; it is a fundamental violation of ERISA's core anti-discriminatory purpose: ensuring that participants have a fair and compliant opportunity to be treated the same as non-smokers.

8.      Further, Defendants failed to provide notice of a reasonable alternative standard, which is a standalone violation of 42 U.S.C. § 300gg-4(j)(3)(E) ("The plan or issuer involved shall disclose in all plan materials describing the terms of the wellness program the availability of a reasonable alternative standard."). Defendants failed to indicate that the smoking cessation program is a reasonable alternative standard that would provide participants with the full reward upon completion. They failed, year after year, to include contact information for accessing the alternative standard and failed to inform participants of their right to have their personal doctor involved in the alternative standard process, as explicitly required. 45 C.F.R. § 146.121(f)(4)(v). Neither Defendants' Benefit Guides nor the SPD contain this information, despite the former clearly discussing the tobacco surcharge. *See* Final Regulations, 33166 ("a plan disclosure that references premium differential based on tobacco use . . . must include this disclosure"). These notice violations disqualify Defendants from asserting an affirmative defense in response to Plaintiff's allegations that its tobacco surcharge is discriminatory. Because Defendants cannot qualify for the statutory exception, the tobacco surcharge they impose on participants is unlawful and discriminatory in violation of ERISA.

9.      This Complaint alleges that Defendants impose a health-based tobacco surcharge without making available a compliant alternative standard to avoid the surcharge. Defendants bear

6

the burden of proving that their tobacco surcharge is lawful by showing that their wellness program fully complies with every requirement under ERISA, including making available a reasonable alternative standard that allows all participants to avoid the surcharge and receive the full reward if they satisfy that standard. Defendants cannot meet this burden because there is no indication that the wellness program provides the "full reward." Further, even if Defendants do make the "full reward" available to all nicotine-using participants, they do not tell anyone about it. Defendants fail to provide notice of a reasonable alternative standard in all Plan materials discussing the surcharge. Not informing participants that there are avenues available to them to avoid the surcharge makes the surcharge facially noncompliant. No amount of *post hoc* justifications can cure this fundamental defect. Defendants' Plan is not a "program[] of health promotion or disease prevention" as required by ERISA but instead an impermissible cost-shifting scheme that unlawfully penalizes employees for their health status.

10.     Participants like Mr. McNeil are permitted to challenge a surcharge when there is no clear wellness program offered or when there is no notice of any avenue to avoid the surcharge. Once a participant alleges that a surcharge violates ERISA's anti-discrimination provisions and alleges facts to support the deficiency in the wellness program, the burden shifts to the employer to demonstrate that its wellness program fully satisfies all the statutory and regulatory criteria, including the obligation to make available the "full reward" and to notify participants of the same. *See Cunningham v. Cornell Univ.*, 145 S. Ct. 1020, 1029 (2025) (reaffirming "that 'the burden of persuasion as to certain elements of a plaintiff 's claim may be shifted to defendants, when such elements can fairly be characterized as affirmative defenses or *exemptions*.'").

11.     Plaintiff is an employee of Marriott who paid, and continues to pay, the unlawful tobacco surcharge to maintain health insurance coverage under the Plan. This surcharge imposed

an additional financial burden on Plaintiff and continues to impose such a burden on those similarly situated.

12.     Plaintiff brings this lawsuit individually and on behalf of all similarly situated Plan participants and beneficiaries, seeking to recover these unlawfully charged fees and for Plan-wide equitable relief to prevent Marriott from continuing to profit from its violations under 29 U.S.C. § 1109.  Under 29 U.S.C. § 1109, the Marriott Benefits Department is a fiduciary of the Plan who has a legal obligation to act in the best interests of Plan participants and to comply with federal law. Plaintiff, on behalf of himself and the Plan as a whole, seeks appropriate equitable relief under 29 U.S.C. §§ 1132(a)(2) and (a)(3) to address Defendant's ongoing violations of ERISA's anti-discrimination provisions.

## **PARTIES**

13.     Plaintiff William McNeil is, and at all times mentioned herein was, an individual citizen of the State of Maryland residing in the County of Prince George's. Plaintiff is an employee of Marriott, who paid a tobacco surcharge of $15 per week (roughly $780 annually) associated with the Plan. Plaintiff is required to pay this tobacco surcharge to maintain health insurance under the Plan.

14.     Plaintiff is a participant in the Plan pursuant to 29 U.S.C. § 1002(7).

15.     Defendant Marriott is Delaware corporation with its principal place of business in Bethesda, Maryland. Marriott is a multinational hospitality company that owns, operates, and franchises hotels and related lodging facilities throughout the country and worldwide. Marriott is the sponsor of the Plan.

16.     Defendant Benefits Department is the designated Plan Administrator of the Plan within the meaning of ERISA § 3(16)(A)(i), 29 U.S.C. § 1002(16)(A)(i). As Plan Administrator,

the Benefits Department is responsible for administering the Plan, including interpreting its terms, communicating with participants, and periodically reviewing the terms of the Plan to ensure compliance with the law. Upon information and belief, the Benefits Department is an unincorporated entity headquartered in Bethesda, Maryland, and its members work and reside in or around Bethesda.

17.     At all times relevant to this lawsuit, Defendants sponsored, maintained, and managed the Plan. Marriott employs over 400,000 individuals worldwide. As of December 31, 2023, there were over 80,000 participants in the Plan. Defendants' employee benefit plan is subject to the provisions and statutory requirements of ERISA pursuant to 29 U.S.C. § 1002(3).

## JURISDICTION AND VENUE

18.     The Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331, as this suit seeks relief under ERISA, a federal statute. Upon information and belief, the number of class members is over 1,000, many of whom have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

19.     This Court has personal jurisdiction over Defendant because it is headquartered in this District. Defendant has purposefully availed itself of the privilege of conducting business in Maryland.

20.     Venue is proper in this District under 29 U.S.C. § 1132(e)(2) because Defendant is headquartered in this District and this is a District in which Defendant may be found.

## FACTUAL BACKGROUND

I.     **DEFENDANT'S TOBACCO SURCHARGE VIOLATES ERISA'S ANTI-DISCRIMINATION RULE**

A.  **Statutory and Regulatory Requirements**

21.    To expand access to affordable health insurance coverage, the Affordable Care Act ("ACA") amended ERISA to prohibit any health insurer or medical plan from discriminating against participants in providing coverage or charging premiums based on a "health-related factor," including tobacco use. Under this rule, a plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any health-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." ERISA § 702(b)(1), 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1).

22.    The statute permits group health plans to "establish[] premium discounts or rebates . . . in return for adherence to *programs of health promotion and disease prevention*" (29 U.S.C. § 1182(b)(2)(B) (emphases added)); however, these "wellness programs"—to qualify for this statutory safe-harbor exception—must strictly adhere to the mandated regulatory requirements.

23.    Under ERISA § 505, 29 U.S.C. § 1135, Congress granted the Department of Labor the authority to issue regulations, including the power to establish regulations prohibiting discrimination against participants and beneficiaries based on their health status under ERISA § 702, 29 U.S.C. § 1182. This authority empowers the Secretary of Labor (the "Secretary") to "prescribe such regulations as he finds necessary or appropriate to carry out the provisions of" Title I of ERISA. (29 U.S.C. § 1135). Furthermore, ERISA § 734, 29 U.S.C. § 1191c, explicitly reinforces the Secretary's authority to issue regulations concerning group health plan requirements, which grants the power to "promulgate such regulations as may be necessary or appropriate to carry out the provisions" of ERISA Title I, Part 7. 29 U.S.C. § 1191c.

24.     Exercising this delegated authority, in 2006, the Secretary issued regulations through the notice-and-comment rulemaking process outlining the criteria that a wellness program must meet to qualify for the premium non-discrimination exception under ERISA § 702(b). *See* Final Regulations, 33158–59. Following the amendments by the ACA and Public Health Service Acts, in 2010, the Departments published proposed regulations in November 2012 to "amend the 2006 regulations regarding nondiscriminatory wellness programs." *Id.*, 33159. These regulations (i.e., the Final Regulations) were approved and signed in 2013 to be effective January 1, 2014. *Id.*, 33158.

25.     The Final Regulations specify that health promotion or disease prevention programs, such as outcome-based wellness initiatives (i.e., smoking cessation programs), must meet detailed requirements to qualify for the statutory safe harbor. As the Departments explained, these criteria "***must be satisfied*** in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status." *Id.*, 33163. "That is," the Departments explained, "these rules set forth criteria for an ***affirmative defense*** that can be used by plans and issuers in response to a claim that the plan or issuer discriminated" against participants. *Id.* (emphasis added). That means once a participant alleges a discriminatory surcharge along with facts showing that the alternative standard offered to them is deficient, the burden then shifts to the employer to prove that the wellness program that satisfies *all* the necessary criteria.

26.     The criteria in the Final Regulations are not optional. They serve as the only lawful pathway for plans to impose health-based premium differentials by ensuring that wellness programs do not arbitrarily penalize participants and they prevent employers from using surcharges as a revenue-generating mechanism rather than a genuine tool for health promotion. If a wellness program fails to meet even one of these stringent requirements, the program is

noncompliant and the employer cannot benefit from the statutory carve-out. *See* § 2590.702(f)(4) (describing the "[r]equirements for outcome-based wellness programs," stating that a program "does not violate the provisions of this section *only if __all__ of the [] requirements are satisfied*.").

### B. Regulatory Criteria

27.     To comply with ERISA and avoid unlawful discriminatory surcharges, outcome-based wellness programs must meet the following five (5) criteria:

(a) Frequency of opportunity to qualify: Participants must be given at least one chance annually to qualify for the reward associated with the program to ensure ongoing accessibility and fairness. 29 C.F.R. § 2590.702(f)(4)(i).

(b) Size of reward: penalties or rewards cannot exceed 50% of the cost of employee-only coverage. § 2590.702(f)(4)(ii)

(c) Reasonable design: programs must be "reasonably designed" to promote health and cannot be "a subterfuge for discriminating based on a health factor." This determination is based on all the relevant facts and circumstances. "To ensure that an outcome-based wellness program is reasonably designed to improve health and does not act as a subterfuge for underwriting or reducing benefits based on a health factor, a reasonable alternative standard to qualify for the reward must be provided to any individual who does not meet the initial standard based on a measurement, test, or screening. . . ." § 2590.702(f)(4)(iii)).

(d) Uniform availability and reasonable alternative standards: "The full reward under the outcome-based wellness program must be available to all similarly situated individuals." § 2590.702(f)(4)(iv).

(e) Notice of availability of reasonable alternative standard: notice must include (a) instructions on how to access the reasonable alternative standard; (b) contact information for inquiries about the alternative standard; and (c) an explicit statement that participants' personal physician's recommendations will be accommodated. *See* § 2590.702(f)(4)(v).

28.    The Departments provided valuable insight into each of the criteria, reflecting their intent to operationalize the statute's protections in a manner that both promotes health and prevents discriminatory practices under ERISA.

29.    Regarding the first criteria, "the once-per-year requirement was included as a bright-line standard for determining the minimum frequency that is consistent with a reasonable design for promoting good health or preventing disease." Final Regulations, 33162. The once-per-year requirement ensures that participants have a meaningful opportunity to participate in a reasonable alternative standard.

30.    A key requirement of the fourth criterion for outcome-based programs is that the "full reward" must be available to "all similarly situated individuals[,]" regardless of when they meet the reasonable alternative standard during the plan year. *See* Final Regulations, 33165. Critically, the Departments clearly state that it is "[t]he intention of the Departments . . . that, regardless of the type of wellness program, ***every individual*** participating in the program should be able to receive the ***full amount of any reward or incentive***. . . ." *Id.* (emphases added). While plans have flexibility in determining the manner in which they provide the "full reward," providing the "full reward" to every participant is ***mandatory***, regardless of when the participant satisfies the alternative standard. The Departments have made this clear:

> While an individual may take some time to request, establish, and satisfy a reasonable alternative standard, ***the same, full reward must be provided to that individual as is provided to individuals who meet the initial standard for that plan year***. (For example, if a calendar year plan offers a . . . premium discount and an individual . . . satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.) Plans and issuers have flexibility to determine ***how*** to provide the portion of the reward corresponding to the period before an alternative was satisfied (e.g., payment for the retroactive period or pro rata over the remainder of the year) ***as long as . . . the individual receives the full amount of the reward***.

Final Regulations, 33163 (emphases added).

31.     The Final Regulations provide an example of a non-compliant plan that imposes a tobacco use surcharge but does not facilitate the participant's enrollment in or participation in a smoking cessation program. *See id.*, Example 8. Instead, the employer advises the participant to find a program, pay for it, and provide a certificate of completion. *Id*. The Final Regulations conclude that the plan is not compliant because it "has not offered a reasonable alternative standard . . .  and the program fails to satisfy the requirements of paragraph (f) of this section." *Id*.; Final Regulations, 33180.

32.     For health contingent wellness programs, the Final Regulations require the notice be disclosed "in ***all*** plan materials describing the terms of" the program. 42 U.S.C. § 300gg-4(j)(3)(E); 45 C.F.R. § 146.121(f)(4)(v) (emphasis added). Further, the Final Regulations establish that "[f]or ERISA plans, wellness program terms (including the availability of any reasonable alternative standard) are generally required to be disclosed in the summary plan description (SPD), as well as in the applicable governing plan documents . . . if compliance with the wellness program affects premiums . . . under the terms of the plan." Final Regulations, 33166. Plans that charge their participants more and fail to inform participants of a reasonable alternative standard to the surcharge violate these requirements.

33.     Defendants tobacco surcharge is discriminatory because Defendants fail to make available a compliant wellness program that would allow participants to avoid the entire surcharge. Even if there is a wellness program that makes available the "full reward," Defendants do not tell anyone about it in the Plan materials. Marriott should have not just offered a smoking cessation program, but one that makes available to participants the full reward, regardless of when those participants satisfy it during the Plan year. Additionally, Defendants should have included clear and specific notice of the availability of a reasonable alternative standard in all Plan materials discussing the surcharge, which it failed to include in either the Benefit Guides or the SPD. That notice should have stated that as an alternative to paying the tobacco surcharge, Marriott was offering a no-cost program. Defendants should have included contact information for accessing the alternative standard as well as a statement that the Plan would accommodate the recommendations of the participant's personal physician regarding the medical appropriateness of the alternative standard.

34.     Had Defendant provided participants with notice of the avenues available to participants to avoid the surcharge, including clear instructions and contact information in *all* Plan materials referencing the surcharge, Plaintiff and similarly situated individuals would have been aware of the steps they could have taken to avoid or even reduce the unlawful tobacco surcharge. Instead, Defendants failed to provide this notice depriving participants of the opportunity to exercise their rights under ERISA and directly contributed to the financial harm suffered by Plaintiff and the Class.

35.     Because Defendants failed, year after year, to make available a compliant wellness program, and to notify participants of that option, Defendants' wellness program is noncompliant and, therefore, the tobacco surcharge is discriminatory.

36.     Allowing entities like Marriott to exploit their participants and unlawfully extract millions from them without making available a compliant wellness program transforms the surcharge into a "subterfuge for discrimination" and undermines ERISA's purpose of protecting workers from health-based discrimination. If unchecked, this practice would permit employers to manipulate wellness programs as revenue-generating schemes rather than genuine health initiatives, shifting unjust financial burdens onto employees in violation of federal law.

## II.     DEFENDANTS CANNOT AVAIL THEMSELVES OF ERISA'S SAFE HARBOR

37.     Defendants' wellness program violates ERISA and its implementing regulations by failing to provide a compliant "program[] of health promotion or disease prevention" or notifying anyone about it. To qualify for ERISA's safe harbor, a wellness program must offer a clearly defined, reasonable alternative standard and ensure that all participants who satisfy it receive the full reward. Defendants' Plan fails to meet these requirements. It does not clearly offer a reasonable alternative standard and fails to provide proper notice of the alternative standard in all plan materials discussing the surcharge.

38.     Defendants impose a punitive premium increase of $15 weekly but there is no avenue for tobacco-using participants to avoid this premium increase aside from quitting tobacco and being nicotine free. It is unclear whether these participants even have the option of having the surcharge removed on a *prospective* basis, despite statutory and regulatory requirements that the "full reward" must be available to "all similarly situated individuals" who satisfy a reasonable alternative standard.

39.     Benefit Guides from 2022 through 2024 (the "Guides") state that "[p]articipants (associates and dependents) who use tobacco may be subject to a weekly tobacco surcharge." The

Guides then direct participants to the "information on a Smoking Cessation Program." The section discussing the Smoking Cessation Program states:

> FREE Smoking Cessation Program
> If you smoke, one of the healthiest things you can do is to quit. We know it's not easy, but there is help available! Through this program, you can talk to an expert for help and receive free nicotine replacement therapies such as lozenges, gum, and patches. The free Smoking Cessation Program is available to all full-time, part-time, and pool status associates. You don't have to be enrolled in a medical plan to participate.

There is no further discussion of the tobacco surcharge in the Guides. Notably, the Guides fail to communicate to participants that successful completion of the Smoking Cessation Program would result in the removal of the tobacco surcharge, even on a *prospective* basis, and thereby provide them with the full reward. Nowhere in the Guides, or the SPDs, do Defendants make clear that participation in the program is a "reasonable alternative standard" under ERISA and its implementing regulations. This omission leaves participants unaware that avoiding the surcharge is even possible.

40.    The Guides contain no contact information for participants to ask questions, enroll, or confirm that participation would waive the surcharge. A participant reading Defendants' materials would reasonably conclude that the surcharge was mandatory and unavoidable, with the cessation program offered merely as a general health resource, not as a regulatory compliance mechanism. Defendants' materials also omit the required statement that participants' personal physician's recommendations would be accommodated. The absence of this language, alone, renders the program noncompliant. By failing to provide such basic instructions, Defendants' wellness program was opaque, inaccessible, and practically unusable as a reasonable alternative standard.

41.      Defendants' failure to integrate notice of a reasonable alternative standard into the Guides, the SPD, and the Plan documents violates both ERISA and the Final Regulations, which expressly require disclosure "in all plan materials describing the terms of the program. . . ." 42 U.S.C. § 300gg-4(j)(3)(E); 45 C.F.R. § 146.121(f)(4)(v). Defendants further failed to disclose whether the surcharge would be waived retroactively for participants who completed the Smoking Cessation Program mid-year. This omission also contravenes ERISA and the Final Regulations' mandate that participants who satisfy a reasonable alternative standard at any point during the plan year are entitled to the same "full reward" as those who met the initial standard from the outset. 42 U.S.C. § 300gg-4(j)(3)(D); 45 C.F.R. § 146.121(f)(4)(iv).

42.      Defendants also failed to ensure that the cessation program was reasonably designed to promote health, rather than to serve as a subterfuge for cost-shifting. Participants were left with no clear path to obtain the benefit of surcharge removal, while Defendants collected millions of dollars in unlawful surcharges each year. The lack of disclosure, coupled with the punitive surcharge, reflects a program designed more for revenue generation than health promotion

43.      By omitting material information and required disclosures, Defendants deprived participants of the ability to make informed choices about their health coverage and financial obligations. This conduct violates not only the regulatory framework governing wellness programs but also ERISA's fiduciary duties of loyalty and prudence, as Defendants failed to administer the Plan solely in the interest of participants.

### III.   DEFENDANTS' SELF-DEALING AND MISMANAGEMENT OF PLAN FUNDS

44.      Defendants administer the tobacco surcharge by designating which participants are charged and withholding the surcharge directly from participants' paychecks as a before-tax plan contribution, alongside required premium deductions. These deductions are part of the funding

stream for Plan coverage, not separate penalties, and are treated the same way as other contributions made to support the Plan's medical benefits.

45.     The governing Plan documents make clear that medical coverage is funded by both employer and participant contributions. Marriott commits a defined "company contribution amount" toward the cost of coverage, with participants paying the balance. By layering a tobacco surcharge on top of those required participant contributions, Defendants created what should have been a third stream of funding available to the Plan: (1) participants' required premium contributions, (2) Marriott's promised company contribution amount, and (3) the additional tobacco surcharge. But instead of allowing all three funding streams to flow into the Plan, Defendants used the tobacco surcharge to offset Marriott's funding obligation. Because the cost of coverage for each tier is fixed, every dollar of surcharge collected reduced Marriott's company contribution dollar-for-dollar. Thus, rather than increasing resources available to the Plan, the surcharge simply shifted costs away from Marriott and onto participants. For example, Plaintiff's paystub for the week ending August 8, 2025, shows a recurring $15.00 "Tobacco Surcharge" withheld as a before-tax deduction. These surcharges were taken in the same manner as other premium contributions and are indistinguishable in treatment from the employee's share of plan funding.

46.     This practice constitutes classic self-dealing because Defendants manipulated the Plan's funding structure to realize savings for Marriott, depriving the Plan of the full benefit of the three distinct funding streams it should have received. Defendants' actions caused the Plan to lose the very employer contributions it was otherwise obligated to make, in violation of ERISA's fiduciary duty standards.

47.    In doing so, Defendants failed to act solely in the interest of participants and beneficiaries, as ERISA requires. Rather than use the surcharge proceeds to offset the premiums of non-smokers, Defendants used the funds to save Marriott money. The money that Marriott did not have to contribute to the Plan sat in its accounts and earned interest, while the Plan was deprived of the full amount of funding it should have received, stripping the Plan of employer dollars it was owed and converting those savings into financial benefit for Marriott. This diversion of funds is self-dealing, violates the duty of loyalty, and constitutes a prohibited transaction under ERISA §§ 404 and 406.

## CLASS DEFINITION AND ALLEGATIONS

48.    Plaintiff brings this action individually and on behalf of all other similarly situated individuals, pursuant to Rule 23(b)(1), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

49.    Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

> **Tobacco Surcharge Class**
> All individuals residing in the U.S. who, from 2014 to the time of judgment, paid a tobacco surcharge in connection with their participation in a health or welfare plan offered by Defendants.

50.    Excluded from the Class are Marriott's officers and directors.

51.    Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

52.    The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3).

53.    **Numerosity**. This action is appropriately suited for a class action. The members of the Class are so numerous that the joinder of all members is impracticable. Plaintiff is informed,

believes, and thereon alleges, that the proposed Class contains thousands of participants who have been damaged by Defendants' conduct as alleged herein, the identity of whom is within the knowledge of Defendants and can be easily determined through Defendants' records.

54. **Commonality**. This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

a. Whether Defendants' tobacco surcharge discriminates against participants based on a health status related factor;

b. Whether the smoking cessation program constitutes a reasonable alternative standard by which a participant could receive the "full reward" of the tobacco surcharge;

c. Whether Defendants provided the notice in all the plan materials describing the surcharge;

d. Whether Defendants provided the required statement that participants' personal physicians' recommendations would be accommodated;

e. Whether Defendants' wellness program violates ERISA and the Final Regulations;

f. Whether Defendants breached its fiduciary duties by collecting and retaining the tobacco surcharge;

g. Whether Defendants breached their fiduciary duties by collecting and retaining the tobacco surcharge and additional premiums for insurance;

h. Whether Defendants breached their fiduciary duties by failing to periodically review the terms of its wellness program to ensure compliance with ERISA and applicable regulations;

i. Whether Marriott breached its fiduciary duty by failing to properly monitor and overlook the activities of the Benefits Department to ensure compliance with ERISA and the applicable regulations;

j. The appropriate mechanisms to determine damages on a class-wide basis

55. **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class, because, *inter alia*, all Class members have been injured through the uniform misconduct described above and were charged improper and unlawful tobacco surcharge. Moreover, Plaintiff's claims are typical of the Class members' claims because Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class. In addition, Plaintiff is entitled to relief

under the same causes of action and upon the same facts as the other members of the proposed Class.

56.     **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff and members of the Class each participated in health and welfare plans offered by Defendants and were harmed by Defendants' misconduct in that they were assessed unfair and discriminatory tobacco surcharges. Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained competent counsel experienced in complex litigation and class action litigation. Plaintiff has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff.

57.     **Superiority**. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs done to him or her. Further, even if the Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

58.     Plaintiff seeks injunctive, declaratory, and equitable relief on grounds generally applicable to the Class. Unless the Class is certified, Marriott will be allowed to profit from its

unfair and discriminatory practices, while Plaintiff and the members of the Class will have suffered damages. Unless Class-wide injunctions are issued, Defendants may continue to benefit from the violations alleged, and the members of the Class will continue to be unfairly treated.

## CAUSES OF ACTION

### COUNT I
### UNLAWFUL IMPOSITION OF A DISCRIMINATORY TOBACCO SURCHARGE
### (Violation of 29 U.S.C. § 1182)

59.     Plaintiff re-alleges and incorporates herein by reference allegations 1–58 of this Complaint.

60.     Defendants unlawfully impose a tobacco surcharge on all participants who use tobacco in violation of ERISA § 702. By imposing discriminatory surcharges of $15 weekly on participants who use tobacco, without complying with the regulatory requirements, Defendants are violating ERISA § 702(b), 29 U.S.C. § 1182(b)(1). This discrimination stems from Defendants' decision not to provide a reasonable alternative standard that ensures participants who satisfy that standard are provided with the full reward, in violation of ERISA and the Final Regulations.

61.     ERISA explicitly prohibits group health plans from requiring "any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor." *See* 29 U.S.C. § 1182(b). Defendants' Plan violates this prohibition by failing to make available an alternative standard that provides those who satisfy that standard with the "full reward" and failing to provide proper notice of the alternative standard. Thus, Defendants' tobacco surcharge program fails at least two of the requirements to qualify for the statutory safe-harbor, 29 U.S.C. § 1182(b)(2)(B).

62.     Defendants' imposition of the tobacco surcharge violates ERISA § 702, PHSA § 2705, and the Final Regulations, including but not limited to 45 C.F.R. § 146.121(f)(4) and 29 C.F.R. § 2590.702(f)(4). Defendants' wellness program is noncompliant because it does not satisfy the statutory and regulatory criteria.

63.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: (A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan. *See* 29 U.S.C. § 1182(b). Because Defendants' surcharge program does not satisfy several of the five criteria that plans ***must*** comply with to qualify as a compliant "program[] of health promotion and disease prevention," Defendants cannot qualify for the statutory safe-harbor and the tobacco surcharge is, therefore, unlawful and discriminatory. Plaintiff and Class Members are entitled to relief under ERISA § 502(a)(3).

64.     Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff seeks all available and appropriate remedies to redress Defendants' violations of ERISA's anti-discrimination provisions outlined in § 1182(b) and § 300gg-4(b), including but not limited to injunctive relief, restitution, and any other relief necessary to remedy Defendants' unlawful conduct, as set forth in the Prayer for Relief.

## COUNT II
### BREACH OF FIDUCIARY DUTY
### (Violation of ERISA §§ 404 and 406, 29 U.S.C. §§ 1104 and 1106)

65.     Plaintiff re-alleges and incorporates herein by reference allegations 1–58 of this Complaint.

66.    ERISA requires a fiduciary to act "solely in the interest of participants," to do so with "the care, skill, prudence, and diligence" of a prudent person, "in accordance with the documents and instruments governing the plan," and to refrain from "deal[ing] with the assets of the plan" in the fiduciary's own interest. 29 U.S.C. §§ 1104(a)(1); 1106(b)(1). These duties of loyalty and prudence are the "highest known to the law" and require fiduciaries to have "an eye single to the interests of the participants and beneficiaries." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982).

67.    Instead of loyally and prudently acting in the best interests of Plan participants, Defendants chose to use Plan assets to exclusively benefit Marriott, to the detriment of the Plan and its participants, by unlawfully withholding millions of dollars in tobacco surcharges from participants' paychecks and using these funds to offset Marriott's own obligations to contribute to the Plan. The paystubs confirm that these surcharges were collected as before-tax deductions, alongside other plan contributions, and thus were Plan assets from the moment of collection. Defendants breached their fiduciary duty by assessing and collecting the tobacco surcharge in violation of federal law and in violation of the terms of the Plan, and then diverting those funds to reduce Marriott's own costs. The Plan should have received three funding streams: (1) employee premium contributions, (2) Marriott's contribution amount, and (3) the surcharge itself. But Defendants used the surcharge to displace Marriott's own contributions. Upon information and belief, Marriott further profited by retaining those amounts in its own accounts, earning interest, and failing to remit the full employer contribution owed to the Plan.

68.    Year after year, Defendants administered the Plan within the meaning of 29 U.S.C. § 1002(16) and were fiduciaries within the meaning of 29 U.S.C. § 1002(21), in that they exercised discretionary authority and discretionary control respecting the management and administration of

the Plan and its surcharge programs, including the decision not to offer a reasonable alternative standard. Defendants exercised discretionary authority by deciding how surcharge proceeds were handled, funneling the surcharge funds indirectly into Marriott's coffers. The Benefits Department also controlled whether participants would receive the "full reward" of avoiding the surcharge for the Plan year and failed to administer notices or alternatives required by ERISA's implementing regulations.

69.     The Benefits Department controlled and disseminated to all employees the Guides and other Plan communications discussing the premium differential but failed to notify participants of a reasonable alternative standard by which they could avoid the entire year of surcharges. The Benefits Department further failed to conduct periodic or prudent reviews of its surcharge and wellness program and the related communications to ensure compliance with ERISA and its regulations. Instead, the Benefits Department allowed a structurally defective wellness program to persist year after year, even though it resulted in discriminatory surcharges and deprived the Plan of the employer contributions it should have received.

70.     The Benefits Department breached its fiduciary duties by administering a Plan that did not conform with ERISA's anti-discrimination requirements. It acted disloyally by using ill-gotten funds to shrink Marriott's own financial contributions. It also failed to properly notify participants, year after year, of a compliant wellness program and failed to review the terms of the Plan to ensure compliance. These breaches are incompatible with ERISA's core fiduciary mandates.

71.     ERISA also imposes on fiduciaries that appoint other fiduciaries the duty to monitor the actions of those appointed fiduciaries to ensure compliance with ERISA. In allowing the Benefits Department to impose an unlawful tobacco surcharge in connection with a noncompliant

wellness program in violation of ERISA, Marriott breached its fiduciary duties to supervise and monitor the Benefits Department. Marriott also failed to monitor the frequency with which the Benefits Department reviewed the terms of the wellness program to ensure compliance with ERISA.

72.     As a result of the unlawful surcharges, Marriott enriched itself at the expense of the Plan. By deducting these amounts directly from participants' paychecks without properly administering a compliant wellness program, Marriott secured financial savings for itself while participants and the Plan bore increased costs. The structure of the program ensured that "all similarly situated individuals" could not obtain the "full reward" for the entire plan year, and Defendants' communications failed to disclose participants' rights to a reasonable alternative standard. In this way, Defendants transformed what should have been an employer-funded plan contribution into an unjust enrichment for itself, contrary to 29 U.S.C. § 1104(a)(1)(A).

73.     Further, by withholding unlawful tobacco surcharges from participants' paychecks and using those funds to reduce its own financial obligations to the Plan, Defendants caused the Plan to engage in transactions that constituted a direct or indirect exchange of Plan assets for the benefit of a party in interest—namely, Marriott—in violation of 29 U.S.C. § 1106(a)(1). Marriott is a party in interest, as defined under 29 U.S.C. § 1002(14), because it is both the Plan sponsor and a fiduciary exercising discretionary authority over the Benefits Department.

74.     By retaining the amounts of the tobacco surcharges, Marriott increased its own corporate assets and saved the money it would otherwise have had to contribute to the Plan. In doing so, it dealt with Plan assets for its own benefit, in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), which prohibits fiduciaries from engaging in self-dealing. The surcharges should have supplemented, not displaced, Marriott's contributions. By retaining and misusing them,

Marriott benefitted from the surcharge program at the expense of participants, leaving the Plan underfunded compared to what it should have received under its governing documents.

75.     Defendant breached its fiduciary duties by: failing to properly disclose material information about the wellness programs to participants, thereby depriving them of the ability to make informed choices; administering a wellness program that violated ERISA's anti-discrimination provisions; acting on behalf of a party whose interests were adverse to the Plan and its participants, in violation of ERISA § 406(b)(2); and failing to prudently review the Plan and surcharge program to ensure compliance with ERISA's requirements. These breaches caused Plaintiff and the Class to incur unlawful surcharges that shifted costs to participants and away from Marriott. Had Defendants complied with their fiduciary duties, they would have offered a reasonable alternative standard each plan year, ensured that surcharge proceeds were deposited into the Plan as additional funding, and safeguarded participants from bearing unlawful costs.

76.     As a direct and proximate result of these fiduciary breaches, members of the Class lost millions of dollars in the form of unlawful surcharges that were deducted from their paychecks.

77.     Plaintiff is authorized to bring this action on a representative basis on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2). Plaintiff is also permitted, in the alternative, to bring a claim under 29 U.S.C. § 1132(a)(3). Pursuant to 29 U.S.C. § 1109, Defendants are liable to: make good to the Plan all losses resulting from its breaches, including but not limited to any and all equitable and remedial relief as is proper, disgorge all unjust enrichment and ill-gotten profits, and to restore to the Plan or a constructive trust all profits acquired through its violations, as alleged herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered against Defendants on all claims and requests that the Court awards the following relief:

A.  An Order certifying this action as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as Class representative for the Class, and appointing the undersigned to act as Class Counsel;

B.  A declaratory judgment that the unlawful and discriminatory tobacco surcharges imposed on participants violate ERISA's anti-discrimination provisions set forth in ERISA § 702, 29 U.S.C. § 1182;

C.  An Order instructing Defendants to reimburse all persons who paid the unlawful and discriminatory surcharge;

D.  A declaratory judgment that Defendants breached their fiduciary duties in violation of ERISA § 404, 29 U.S.C. § 1104 for, *inter alia*, instituting a surcharge on participants without offering a reasonable alternative standard in violation of ERISA's anti-discrimination provisions and for failing to notify participants of an alternative standard, and for failing to adequately monitor the terms of the Plan, the surcharge, and the wellness program, as well as communications with participants, to ensure they complied with ERISA and the applicable regulations;

E.  An Order requiring Defendants to provide an accounting of all prior payments of the surcharges under the Plan;

F.  Declaratory and injunctive relief as necessary and appropriate, including enjoining Defendants from further violating the duties, responsibilities, and obligations imposed on them by ERISA with respect to the Plan and ordering Defendants to remit all previously collected surcharges;

G.  Disgorgement of any benefits or profits Defendants received or enjoyed due to the violations of ERISA § 702, 29 U.S.C. § 1182(b);

H. Restitution of all surcharge amounts Defendants collected;

I. Surcharge from Defendants totaling the amounts owed to participants and/or the amount of unjust enrichment obtained by Defendants as a result of its collection of the unlawful and discriminatory tobacco surcharges;

J. Relief to the Plan from Defendants for their violations of ERISA § 404, 29 U.S.C. § 1104, under 29 U.S.C. § 1109, including a declaration that the tobacco surcharges are unlawful; restoration of losses to the Plan and its participants caused by Defendants' fiduciary violations; disgorgement of any benefits and profits Defendants received or enjoyed from the use of the Plan's assets or violations of ERISA; surcharge; payment to the Plan of the amounts owed to members who paid the surcharges; removal and replacement of the Plan's fiduciaries, and all appropriate injunctive relief, such as an Order requiring Defendants to stop imposing the unlawful and discriminatory surcharges on participants in the future.

K. An award of pre-judgment interest on any amounts awarded to Plaintiff and the Class pursuant to law;

L. An award of Plaintiff's attorneys' fees, expenses, and/or taxable costs, as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine; and

M. Any other relief the Court determines is just and proper.

Dated:   September 9, 2025                    Respectfully submitted,

                                             **SIRI & GLIMSTAD LLP**

                                             /s/ *Sonjay Singh*
                                             _____

                                             Sonjay Singh, Esq. (Bar No. 2106150137 )
                                             Oren Faircloth (*pro hac vice* forthcoming)
                                             745 Fifth Avenue, Suite 500
                                             New York, New York 10151
                                             Tel: (212) 532-1091
                                             E: ssingh@sirillp.com
                                             E: ofaircloth@sirillp.com

                                             *Attorneys for Plaintiff and the Proposed Class*

31